UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY MURDOCK, ANDREW CRUZ, JOHONEST FISCHER, MAURICE GRANT, THERESA KENNEDY, CHAWAN LOWE, JAMES McGEE, BRIAN NEALS, MYRON NELSON, JOHN PERRY, and DUWAYNE RICHARDSON, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF CHICAGO, <br><br> Defendant. | 20 C 1440 <br><br> Judge Gary Feinerman |

**MEMORANDUM OPINION AND ORDER**

In this putative class action, Plaintiffs allege that the City of Chicago's policy preventing arrestees from posting bond at the police station if arrested on a weekend or holiday, or on a warrant issued outside of Chicago, violates the Fourth Amendment. Doc. 56. Plaintiffs move to compel the City to produce certain Chicago Police Department ("CPD") documents concerning the policy's development and adoption. Doc. 67. The motion is granted in part and denied in part.

**Background**

CPD Special Order S06-12-02 prohibits individuals arrested in Chicago on weekends and court holidays, or on a warrant issued outside of Chicago, from posting bond at the police station. Doc. 56 at ¶¶ 6-10 & p. 28. Those individuals instead must wait until the following day to post bond at Central Bond Court in the presence of a judge of the Circuit Court of Cook County, Illinois. *Id*. at ¶¶ 9-10. Those individuals are held overnight at the police station before being transported to Central Bond Court. *Ibid*.

1

**Discussion**

Plaintiffs seek in discovery a copy of Special Order S06-12-02's "task file," a set of papers by which CPD "documents its work in promulgating written policies." Doc. 67 at 2. The City declined to produce all but some of the task file, arguing that the withheld documents are not relevant and, in the alternative, that they are shielded from discovery by the deliberative process privilege. The City adds that some of the withheld documents are also protected by attorney-client privilege.

I. **Relevance**

Civil Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs argue that the task file is potentially relevant because, among other reasons, it could reveal discrepancies between the City's proffered justifications for the Special Order and CPD's actual reasons for adopting it. Doc. 67 at 4; Doc. 74 at 6-7. The City responds that the task file is not relevant because where, as here, a plaintiff challenges the constitutionality of an express municipal policy, the challenge turns on the policy's objective reasonableness and does not require a showing of deliberate indifference. Doc. 71 at 1-2.

Plaintiffs allege that Special Order S06-12-02 violates the Fourth Amendment by causing individuals arrested in Chicago on weekends or holidays, or on warrants issued outside of Chicago, to suffer unreasonably long post-arrest detentions. Doc. 56 at ¶ 12. The Fourth Amendment "forbids detentions that are unreasonable in length." *Driver v. Marion Cnty. Sheriff*, 859 F.3d 489, 492 (7th Cir. 2017). Although the Fourth Amendment "does not require any particular administrative arrangement for processing bail admissions," "[i]t does require … that whatever arrangement is adopted not result in seizures that are unreasonable in light of the

2

Fourth Amendment's history and purposes." *Williams v. Dart*, 967 F.3d 625, 636 (7th Cir. 2020); *see also Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 515 (7th Cir. 2009) (holding that the constitutionality of detaining arrestees who had already posted bond "depends on whether the length of the delay between the time the Sheriff was notified that bond had been posted and the time that the detainee was released was reasonable").

A justifiable administrative delay in processing an arrestee, arising from "practical realities" such as "unavoidable delays in transporting arrested persons from one facility to another" or "handling late-night bookings where no magistrate is readily available," does not violate the Fourth Amendment. *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004) (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991)). By contrast, a delay motivated by an "improper purpose," *id*. at 747 n.3, 748—such as a delay "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake"—is unreasonable and therefore violates the Fourth Amendment. *Id*. at 746 (quoting *McLaughlin*, 500 U.S. at 56).

Given the nature of the Fourth Amendment inquiry, the task file's documentation of CPD's reasons for adopting the Special Order are potentially relevant to Plaintiffs' claim. If CPD were motivated by an "improper purpose"—for example, if CPD adopted the Special Order "out of spite" for arrestees subject to warrants issued outside of Chicago, or individuals arrested on weekends or holidays, *id*. at 747 n.3—the Special Order might violate the Fourth Amendment. *See Williams*, 967 F.3d at 635 (holding that a sheriff's policy of delaying detainees' court-ordered releases on bail violated the Fourth Amendment because the policy was motivated by the sheriff's "opposition to their release" rather than by legitimate administrative needs). Because the task file includes documents describing the goals and methodologies that

3

informed the Special Order's crafting, Doc. 67-4, it may include evidence of CPD's motivations for adopting it, and therefore is potentially relevant to the Fourth Amendment inquiry.

Even setting aside any potentially improper motivations, the task file could contain evidence that is relevant simply because it contradicts the City's proffered justifications for the Special Order. For instance, in its answer, the City submits that its "policies regarding bonding out people arrested on warrants were mandated by Illinois state law, the Illinois Supreme Court Rules, and/or orders implemented by the Circuit Court of Cook County." Doc. 63 at 23. If the task file contains evidence directly contradicting that justification—for example, a determination from CPD counsel that the Special Order in fact was not legally mandated—that would undermine the predicate of the City's submission that the policy is reasonable under the Fourth Amendment. *See United States v. Wilbourn*, 799 F.3d 900, 909 (7th Cir. 2015) (holding that police officers' proffered justification for a *Terry* stop—that they had reasonable suspicion "based on facts known to them as a result of [an] investigation" into the defendant—was invalid because the record was "devoid of any facts" indicating that the officers knew about the investigation at the time of the stop); *United States v. Dexter*, 165 F.3d 1120, 1124 (7th Cir. 1999) (suggesting that a *Terry* stop would have been improper if the officer had lied about not having been able to see the car's license plate or temporary registration tag).

The City's argument to the contrary—that because Plaintiffs challenge an express municipal policy, they need not show that anybody in CPD acted with deliberate indifference, and therefore that they have no need to delve into the task file, Doc. 71 at 1-2—misunderstands Plaintiffs' theory of relevance. As explained, the Special Order's constitutionality turns, at least in part, on CPD's motivations for developing and adopting it. That makes the task file

4

potentially relevant for reasons having nothing to do with whether CPD officials acted with deliberate indifference.

## II. Deliberative Process Privilege

"The deliberative process privilege, as its name implies, allows an agency to withhold 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'" *Nat'l Immigrant Justice Ctr. v. U.S. Dep't of Justice*, 953 F.3d 503, 508 (7th Cir. 2020) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)). "To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). The Seventh Circuit has not resolved whether state and municipal entities may invoke the deliberative process privilege in a federal question suit, so the question remains open in this Circuit. *See Williamson v. City of Pekin*, 2015 WL 13747583, at *1 (C.D. Ill. July 15, 2015) (citing cases).

Evidence Rule 501 provides that federal common law, not state law, "governs a claim of privilege" in federal question suits. Fed. R. Evid. 501; *see Hamdan v. Ind. Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018) ("[F]ederal courts apply the federal common law of evidentiary privileges—not state-granted privileges—to claims … that arise under federal law."). That said, the "strong policy of comity between state and federal sovereignties" requires federal courts to "consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law." *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (internal quotation marks omitted); *see also Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 933 (7th Cir. 2004) (holding that "comity has required us … to consider with special care the arguments" against compelling the production of medical records that were protected by Illinois's medical records privilege); *Jaffee v. Redmond*, 51 F.3d

1346, 1357 (7th Cir. 1995) (finding it "[p]articularly significant" to the court's recognition of a psychotherapist/patient privilege under Rule 501 that Illinois law "expressly recognizes a psychotherapist/patient privilege"), *aff'd*, 518 U.S. 1 (1996). Moreover, evidentiary privileges must be "narrowly construed," with the court "weigh[ing] the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Mem'l Hosp.*, 664 F.2d at 1061-62 (internal quotation marks omitted); *see also Hamdan*, 880 F.3d at 421 (holding that the district court did not abuse its discretion in declining to recognize a peer-review evidentiary privilege because applying the privilege would "not further[]" the "central purpose" of several States' peer review confidentiality statutes); *United States v. Wilson*, 960 F.2d 48, 50-51 (7th Cir. 1992) (noting that "federal courts generally disfavor privileges and construe them narrowly," weighing Illinois's "weak state interest in confidentiality" against the "strong policy favoring admissibility of relevant evidence in criminal cases," and balancing those interests to reject an evidentiary privilege for state unemployment records).

  Invoking these principles, Plaintiffs submit that the court's Rule 501 analysis should adhere to *People ex rel. Birkett v. City of Chicago*, 705 N.E.2d 48 (Ill. 1998), where the Supreme Court of Illinois declined to recognize under Illinois law "a common law deliberative process privilege to exempt from discovery confidential advice given to those involved in making [decisions and] policy for state and local government." *Id*. at 50 (alterations in original, internal quotation marks omitted); *see* Doc. 67 at 10-12; Doc. 74 at 8-9. The City responds that the court should follow district court decisions holding that municipal entities and officials may invoke the deliberative process privilege in federal question suits. Doc. 69 at 2, 8-10; Doc. 71 at 4. In

support, the City contends that requiring it "to produce the task files will chill open and frank discussions and collaboration over the polices of the second largest police department in the country." Doc. 69 at 7.

As the City correctly observes, some district court decisions hold that, despite *Birkett*, state and municipal entities in Illinois can invoke the deliberative process privilege in federal question cases. *See Evans v. City of Chicago*, 231 F.R.D. 302, 315-16 (N.D. Ill. 2005); *see also Guzman v. City of Chicago*, 2011 WL 55979, at *3 & n.1 (N.D. Ill. Jan. 7, 2011) (following *Evans*); *Tumas v. Bd. of Educ. of Lyons Twp. High Sch. Dist. No. 204*, 2007 WL 2228695, at *5 n.4 (N.D. Ill. July 31, 2007) (same). Those decisions rest on the notion that the "'strong policy of comity between state and federal sovereignties [that] compels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy' … [does not] permit[]—much less require[]—federal courts to ignore federal common law privileges merely because they have not been recognized in state law." *Evans*, 231 F.R.D. at 315 n.5 (quoting *Mem'l Hosp.*, 664 F.2d at 1061).

The court respectfully disagrees with those decisions. That federal common law recognizes a deliberative process privilege for federal agencies, *see EPA v. Mink*, 410 U.S. 73, 86-87 (1973), does not necessarily mean that it does the same for state and municipal agencies. Again, *Memorial Hospital* requires courts to "consider the law of the state in which the case arises in determining whether a privilege should be recognized [under Rule 501] as a matter of federal law." 664 F.2d at 1061. As Justice Jackson put the same point, while "[a] federal court sitting in a non-diversity case … does not sit as a local tribunal," and though "in the last analysis [a federal court's] decision turns upon the law of the United States, not that of any state," "[i]n some cases [a federal court] may see fit for special reasons to give the law of a particular state

7

highly persuasive or even controlling effect" when deciding whether to recognize a privilege. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 471 (1942) (concurring opinion), cited in 1974 Conference Committee Notes to Rule 501, H.R. Rep. No. 93-1597. One context in which state law should be given "highly persuasive or even controlling effect" is where, as here, the question posed is whether a state or municipal entity enjoys a discovery privilege arising from the operation of state or municipal government. *See Hunter v. City of Pittsburgh*, 207 U.S. 161, 178 (1907) (holding that, because "[m]unicipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them," their authority "rests in the absolute discretion of the state"); *Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. 518, 629 (1819) ("[It] cannot be controverted[] [t]hat the framers of the constitution did not intend to restrain the states in the regulation of their civil institutions, adopted for internal government"); *Comm'rs of Highways of Towns of Annawan v. United States*, 653 F.2d 292, 296 (7th Cir. 1981) ("A (municipal corporation) is merely a department of the State, and the State may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the State exercising and holding powers and privileges subject to the sovereign will.") (quoting *City of Trenton v. New Jersey*, 262 U.S. 182, 187 (1923)) (parentheses in original).

When it declined in *Birkett* to recognize a deliberative process privilege under Illinois law, the Supreme Court of Illinois reasoned that there is "no real evidence that governmental officials"—coincidentally, Chicago officials—"would withhold giving advice they believe is necessary and correct, based merely upon the remote possibility that it could some day be produced in litigation." 705 N.E.2d at 53. The Supreme Court of Illinois is in a far better

8

position than a federal court to understand how state and municipal officials in Illinois perform their duties. That understanding is particularly significant here.

As noted, federal courts "deciding whether the privilege asserted should be recognized" under Rule 501 "should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Mem'l Hosp.*, 664 F.2d at 1061-62 (internal quotation marks omitted); *see also Univ. of Penn. v. EEOC*, 493 U.S. 182, 189 (1990) ("We do not create and apply an evidentiary privilege unless it promotes sufficiently important interests to outweigh the need for probative evidence.") (internal quotation marks omitted). And according to the Supreme Court of Illinois, the purpose served by the deliberative process privilege—to "encourage candor" by "blunt[ing] the chilling effect that accompanies the prospect of disclosure," *Sierra Club*, 141 S. Ct. at 785—has no purchase for state and municipal officials in Illinois. It necessarily follows that the Rule 501 balance tips decisively against recognizing the privilege for state and municipal officials and entities in Illinois. Indeed, even if *Birkett* were empirically wrong to conclude that the privilege's absence would not chill communications among state and municipal officials in Illinois, recognizing the privilege for those officials in federal question cases in federal court would hardly relieve the chilling problem given the privilege's absence in Illinois state court or in cases in federal court where Illinois law supplies the rule of decision.

In sum, the court declines to recognize under Rule 501 a deliberative process privilege in federal question cases for state and municipal officials in Illinois, and therefore rejects the City's argument that the privilege protects from discovery the Special Order's task file.

9

**III.	Attorney-Client Privilege**

"The attorney-client privilege protects confidential communications made by a client to his lawyer where legal advice of any kind is sought from a professional legal advisor in his capacity as such." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (internal quotation marks omitted, cleaned up). Civil Rule 26(b)(5)(A) provides that a party withholding otherwise discoverable information on privilege grounds must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 623 (7th Cir. 2010).

The City asserts the attorney-client privilege as a ground for withholding two sets of emails in the Special Order's task file. Doc. 67-4 at 9. Plaintiffs contend that the City's privilege log does not provide the detail required by Rule 26(b)(5)(A) because it "does not identify the attorneys involved in the communications," fails to "provide any information about the nature of the legal advice purportedly sought," and fails to support the privilege's application on a "document-by-document basis." Doc. 67 at 15. The City responds that its assertions of privilege in its privilege log are sufficiently specific because they "provide[] the dates of the communications, identif[y] the individuals outside the CPD's Office of Legal affairs involved, and state[] that the communications either seek, facilitate, discuss, or provide legal advice." Doc. 69 at 11.

The first log entry (FCRL 1787-1790), which concerns a single email, satisfies Rule 26(b)(5)(A) because it identifies the email's date, author, and recipient (the CPD Office of Legal Affairs), and describes the email as "seeking legal advice." Doc. 67-4 at 9. The second entry (FCRL 1793-1831), which concerns multiple emails, does not satisfy Rule 26(b)(5)(A) because it

10

fails to identify the emails' recipients. *Ibid*. ("[I]nternal e-mail messages from Officer Robert Long, Sergeant Eugene Bikulcius, Lieutenant Eric Winstrom and the Chicago Police Department's Office of Legal Affairs personnel seeking, facilitating, discussing, and providing legal advice."). Thus, if the City wishes to withhold those emails, it must serve a corrected privilege log that lists each of their recipient(s).

## Conclusion

Plaintiffs' motion to compel is granted in part and denied in part. The City shall produce the task file for CPD Special Order S06-12-02 by October 18, 2021, except for the portions of the task file (FCRL 1787-1790, 1793-1831) for which it has asserted the attorney-client privilege. The City must also produce an amended privilege log for entry FCRL 1793-1831 by October 18, 2021. If Plaintiffs believe that the amended privilege log entry does not satisfy Civil Rule 26(b)(5)(A), it should confer with the City and seek the court's assistance if an accord cannot be reached.

October 4, 2021

_____
United States District Judge