UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Anthony Murdock, et al., | |
| *Plaintiff,* | Case No. 20-cv-1440 |
| v. | Hon. Gary S. Feinerman |
| City of Chicago, | |
| *Defendant.* | |

**CITY OF CHICAGO'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)**

Defendant, the City of Chicago ("City"), by its undersigned counsel, submits this Reply in Support of the Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) ("Motion"). (Dkt. 115.) In support thereof, the City states:

**INTRODUCTION**

Plaintiffs' Response to Motion for Judgment on the Pleadings ("Response"), (Dkt. 119), is deficient in several respects, and fails to rebut the City's arguments for dismissal. In an attempt to avoid dismissal, Plaintiffs refer to matters that are outside of the pleadings, which the Court may not consider when deciding a Rule 12(c) motion. The Response repeatedly cites to Plaintiffs' recently-filed Amended Motion to Certify Case as a Class Action ("Class Motion"), which incorporates 447 pages' worth of exhibits, and includes material allegations that were not pled in the operative Amended Complaint ("Complaint"). Plaintiffs' belated attempts to amend their Complaint through the Response and the Class Motion, and to inject factual disputes that are not contained in the pleadings are procedurally improper, and should be rejected.

The Response also fails to demonstrate why judgment for the City should not be entered

74469327v6

on the pleadings. Plaintiffs' Fourth Amendment claims fail as alleged. Each Plaintiff was arrested pursuant to a valid arrest warrant that was based on probable cause, detained until he or she could be transported to Central Bond Court for the next regularly scheduled court call, presented to a judge who admitted them to bail, and promptly released thereafter. No Plaintiff was detained for more than 38 hours. Plaintiffs' brief detentions while they awaited bond hearings did not violate the Fourth Amendment because they were not held for more than 68 hours, which the Seventh Circuit found reasonable under the Fourth Amendment in *Mitchell*.

Plaintiffs' Equal Protection claims also lack merit and are improperly pleaded. As Plaintiffs concede in the Response, the alleged "invidious and irrational discrimination" in Special Order S06-12-02 ("SO S06-12-02") does not implicate membership in a protected class and indeed, Plaintiffs do not allege in the Complaint their membership in protected classes. As such, SO S06-12-02's distinction between out-of-county warrant arrests and all arrests on weekends and Court Holidays, and in-county warrant arrests on weekdays is subject to rational basis review. Under that standard of review, Plaintiffs bear the burden of negating every conceivable basis that might support the classification. *Smith v. City of Chicago*, 457 F.3d 643, 652 (7th Cir. 2006). Plaintiffs failed to do so here, and improperly attempt to shift that burden to the City. Regardless, the City's policy furthers a legitimate state interest in ensuring compliance with arrest warrants and promptly presenting arrestees to bond court where the judge admits them to bail. Plaintiffs cannot demonstrate a violation of the Equal Protection Clause.

Moreover, under binding Circuit precedent, the City may not be held liable under Section 1983 when the only "policy" at issue is enforcing state law. SO S06-12-02 implements Sections 5/109-1 and 5/109-2 of the Illinois Code of Criminal Procedure ("Criminal Code"), and a 2015 General Administrative Order issued by the Chief Judge of the Circuit Court of Cook County

2

("GAO 2015-06"), which state that individuals who are arrested with or without warrants "shall" be brought before a judge who admits them to bail. Thus, state law was the "moving force" behind Plaintiffs' alleged constitutional injuries, *not* the Special Order, which is fatal to Plaintiffs' claims. Plaintiffs' citation to a separate provision of the Criminal Code, which provides that the sheriff and other peace officers "may" accept bond, does not divest Chicago Police Department ("CPD") officers of their duties to present arrestees to a judge in bond court. The City complied with Illinois law and the U.S. Constitution, so Plaintiffs' *Monell* claims fail on their face. For the reasons discussed below, and in the Motion, the Complaint should be dismissed with prejudice.

## ARGUMENT

**I. Plaintiffs' Response Improperly Relies on Extraneous Matters That Should Not Be Considered on a Motion for Judgment on the Pleadings.**

As a preliminary matter, Plaintiffs' Response repeatedly refers to factual matters that are not contained in the Complaint, the City's Answer, or that are subject to proper judicial notice. (*See, e.g.*, Dkt. 119, Pls.' Resp. ¶¶ 1-2, 4, 6, 15.) Unlike the City's Motion, which accepted Plaintiffs' allegations as true and construed them in a light most favorable to Plaintiffs, their Response extends well beyond the pleadings. For instance, Plaintiffs frequently cite to their Class Motion that incorporates more than 400 pages of exhibits. (*See* Dkt. 117, Pls.' Am. Mot.) Those exhibits include, *inter alia*, arrest reports and warrants for each Plaintiff, their responses to certain of the City's written discovery requests, data compilations of purported class members received from the Cook County Sheriff's Office pursuant to an Illinois Freedom of Information Act request, and other extraneous matters. (*See* Dkt. 117-1, Index of Exs.)

It is clear that Plaintiffs are attempting to amend the Complaint's sparse and inadequate allegations through their Response and Class Motion to save it from dismissal. But none of these outside matters may be considered when deciding the City's Motion. *See Mich. Mut. Ins. v.*

3

*Marriott Corp.*, No. 90 C 6550, 1992 WL 82498, at *4 n.9 (N.D. Ill. Apr. 17, 1992) (granting motion for judgment on the pleadings, in part, and disregarding "references in the briefing to matters outside the pleadings [to] treat the motion for judgment on the pleadings as just that."). Nor are they necessary for this Court to enter judgment in the City's favor on the pleadings. The Court should disregard them entirely.

### II. The Complaint Does Not Allege an Underlying Constitutional Violation.

Plaintiffs' Section 1983 *Monell* claims fail as a matter of law because Plaintiffs have not adequately articulated underlying violations of any constitutional rights. (*See* Dkt. 115, Mot. §§ I–III.) However, Plaintiffs contend, without citing to the allegations in their Complaint and again relying on the Class Motion, that they have adequately alleged claims arising under the Fourth and Fourteenth Amendments. (*See* Dkt. 119, Pls.' Resp. ¶¶ 10, 14.) But Plaintiffs' constitutional claims are both insufficiently alleged and foreclosed by binding Seventh Circuit precedent. (*See* Dkt. 115, Mot. §§ I–III.) Additionally, Plaintiffs' alleged constitutional violations, if any, were not caused by SO S06-12-02, but rather Illinois law and GAO 2015-06. As such, the City may not be held liable under Section 1983 for enforcing state law. For the reasons discussed below, the Complaint should be dismissed with prejudice.

#### A. The City cannot be held liable under Section 1983 for abiding by Illinois law and GAO 2015-06, both of which dictated Plaintiffs' presentation to bond court.

The City demonstrated in the Motion that Plaintiffs cannot establish that their detentions were unreasonable because SO S06-12-02's procedures comply with Sections 5/109-1 and 5/109-2 of the Criminal Code, and GAO 2015-06. (Dkt. 115, Mot. at 12-15.) However, Plaintiffs claim that compliance with the Criminal Code and the circuit court's administrative order do not provide the City with a viable defense to their *Monell* claims, and further argue that "'state law is not a defense to liability under federal law; it is a source of liability under federal law.'" (*See* Dkt. 119,

4

Pls.' Resp. ¶ 9 (quoting *Williams v. Gen. Foods Corp.*, 492 F.2d 399, 404 (7th Cir. 1974).)[1] However, that is not the law in this Circuit with respect to Section 1983 claims involving municipal policies that merely implement existing state law.

The City can be held liable under Section 1983 only if it caused a deprivation of constitutional rights. *Monell*, 436 U.S. at 691-92. Municipal liability under Section 1983 cannot be based on vicarious liability. *Id.* at 692. Rather, a plaintiff seeking to establish Section 1983 liability under *Monell* must first show that a municipal policy or custom was the "moving force" that caused the constitutional injury. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020) (*en banc*); *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

However, when a municipality acts pursuant to state or federal law, "it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998). To this end, the Seventh Circuit has repeatedly held that a municipality "cannot be held liable under section 1983 for acts that it did under the command of state or federal law." *Id.* (citing *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991)); *see Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014) ("To say that [a] . . . direct causal link exists when the only local government 'policy' at issue is general compliance with the dictates of state law is a bridge too far; under those circumstances, the state law is the proximate cause of the plaintiff's injury.").

The Seventh Circuit's decision in *Surplus Store* is instructive. There, the plaintiff filed a

---

[1] Plaintiffs erroneously cite to *Williams*, although that quoted language does not appear in the opinion. In any event, *Williams* is inapposite because the plaintiffs brought suit under Title VII, where an employer is vicariously liable for the acts of its employees, whereas under *Monell*, a municipality is not. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978); *Quinones v. City of Evanston*, 58 F.3d 275, 278 (7th Cir. 1995) (distinguishing *Monell* liability from alleged violation of the ADEA based on state law requirements because under the ADEA, "a municipality is vicariously liable" for the acts of its employees).

Section 1983 action against the city defendant after a police officer, acting in accordance with state law, seized property from the plaintiff without a judicial hearing. *Surplus Store*, 928 F.2d at 789. The district court dismissed the action against the city, and the Seventh Circuit affirmed, albeit on different grounds. *Id.* at 790-91.

Relevant here, the Seventh Circuit in *Surplus Store* found that because state statutes provided authority for the officer to seize property without a hearing, the statutes, rather than any municipal policy, caused the alleged constitutional violation. *Id.* at 789, 793. The court rejected the notion that a policy of enforcing state law could be a basis for *Monell* liability, finding it "difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law." *Id.* at 791. Applying the Seventh Circuit's reasoning in *Surplus Store* and its progeny, Plaintiffs' *Monell* claims must fail.

In this case, SO S06-12-02 implements criminal pretrial procedures dictated by Sections 5/109-1 and 5/109-2 of the Criminal Code, both of which require arrestees to appear before a judge when they are arrested with or without a warrant. *See* 725 ILCS 5/109-1(a) ("A person arrested with or without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county . . . ."); 725 ILCS 5/109-2(a) ("Any person arrested in a county other than the one in which a warrant for his arrest was issued shall be taken without unnecessary delay before the nearest and most accessible judge in the county where the arrest was made . . . .").[2] Moreover, Chief Judge Timothy C. Evans of the Circuit Court of Cook County promulgated

---

[2] As a result of the SAFE-T Act, Section 5/109-1 was amended and, as of January 1, 2023, will state: "[a] person arrested with or without a warrant for an offense for which pretrial release may not be denied may, except as otherwise provided in this Code, be released by the officer without appearing before a judge. The releasing officer shall issue the person a summons to appear within 21 days. A presumption in favor of pretrial release shall be applied by an arresting officer in the exercise of his or her discretion under this

GAO 2015-06, which similarly requires arrestees who are arrested on out-of-county warrants to appear in court for a bond hearing. (*See* Dkt. 115, Mot. Ex. A (defendants arrested in Cook County "on an arrest warrant issued by an Illinois state court outside of Cook County shall be required to appear in bond court in the appropriate district or division of this court.").)[3]

The Criminal Code and GAO 2015-06 comply with the Fourth Amendment and account for an arrestee's constitutional rights by requiring those who are arrested based on probable cause to be brought before a judge without unnecessary delay, who admits the arrestee to bail. The City's policy is in furtherance of, and consistent with, these statutory and court-ordered directives, by mandating that those arrested on out-of-county warrants and all warrants on weekends and Court Holidays to be brought before a judge at the next regularly-scheduled bond court hearing. However, Central Bond Court is not staffed at all hours of each day, so arrestees may be reasonably held until they are able to appear before a judge.[4] As this Court has previously acknowledged, "[a] justifiable administrative delay in processing an arrestee, arising from 'practical realities' such as 'unavoidable delays in transporting arrested persons from one facility to another' or 'handling late-night bookings where no magistrate is readily available,' does not violate the Fourth Amendment." (Dkt. 82, Mem. Op. at 3 (quoting *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)).)

Plaintiffs are attempting to manufacture a new constitutional right to immediately post

---

Section." 725 ILCS 5/109-1 (a-3) (eff. Jan. 1, 2023). This provides further indicia that the City's policy complied with the Criminal Code during the time of Plaintiffs' arrests.

[3] The reasoning in *Surplus Store* applies with equal force to the state court's general administrative orders because they are provided the force of law by Illinois Supreme Court Rule 21, which authorizes court proceedings against any person who fails to follow an administrative order of the chief circuit judge. Ill. S. Ct. R. 21(f); (*see* § II(C), *infra*.)

[4] *See, e.g.*, GENERAL ADMINISTRATIVE ORDER NO. 2015-01 BOND CALL SCHEDULE, FIRST MUNICIPAL DISTRICT, CENTRAL BOND COURT AND MUNICIPAL DISTRICTS TWO THROUGH SIX (cookcountycourt.org); GENERAL ADMINISTRATIVE ORDER No.: 2018-11 Bond call schedules, Pretrial Division and Municipal Districts Two through Six (cookcountycourt.org).

7

bond at police stations that is unsupported by existing law, and disregards the unavoidable delays arising from "practical realities" that may reasonably justify detaining an arrestee. (*See id.*) However, Plaintiffs cannot demonstrate that their detentions were unreasonable where they were appeared in bond court either the same day that they were arrested, or the very next day, when a judge was holding court to confirm their identities if necessary, evaluate the bond previously set, and then admit them to bail. (Dkt. 115, Mot. at 10-15.) Thus, the City's policy, which mirrors the Criminal Code and GAO 2015-06, is reasonable and does not violate the Constitution.

Plaintiffs have not adequately alleged a violation of their constitutional rights. But even if they had, the "moving force" behind any alleged constitutional injury is not SO S06-12-02, but rather the Criminal Code and GAO 2015-06. *See Surplus Store*, 928 F.2d at 791-92; *Bethesda Lutheran*, 154 F.3d at 718-19; *Snyder*, 745 F.3d at 249 ("It is the statutory directive, not the follow-through, which causes the harm of which the plaintiff complains."). Merely enforcing Illinois law and a Cook County Circuit Court general administrative order, both of which are constitutional, is insufficient to impose Section 1983 liability on the City because under *Monell*, a policy that enforces state law "simply cannot be sufficient to ground liability against a municipality." *Surplus Store*, 928 F.2d at 791-92. Therefore, Plaintiffs cannot establish that SO S06-12-02 is unconstitutional, or caused their alleged injuries. Their claims should be dismissed as a result.

### B. The Seventh Circuit's decision in *Mitchell* forecloses any alleged Fourth Amendment claims, and Plaintiffs' attempt to distinguish *Mitchell* is unavailing.

As the City argued in the Motion, the Seventh Circuit's decision in *Mitchell v. Doherty*, 37 F.4th 1277 (7th Cir. 2022), forecloses Plaintiffs' alleged Fourth Amendment claims because they all were released on bail after appearing before a bond court judge well within 68 hours. (Dkt. 115, Mot. at 8-12.) In the Response, Plaintiffs claim that *Mitchell* "has no application to plaintiffs' claims because plaintiffs do not argue that they were denied a timely bail hearing." (Dkt. 119, Pls.'

Resp. ¶ 13.) According to Plaintiffs, because a judge had already set their bail, they "should have been permitted to post bond at the police station." (*Id.*) But Plaintiffs' myopic reading of *Mitchell* construes the Seventh Circuit's ruling too narrowly.

*Mitchell* involved warrantless arrests. That is not in dispute. However, contrary to Plaintiffs' misplaced contention, this single distinction does not render *Mitchell* meaningless. As detailed in the Motion, *Mitchell* is far more similar to the instant case than Plaintiffs admit. (Dkt. 115, Mot. at 8-12.) Like the plaintiffs in *Mitchell*, Plaintiffs here were: arrested based on probable cause; detained until they could be transported to the next regularly-scheduled bond court hearing; and presented to a judge within 38 hours after arrest at the absolute latest. (*Id.* at 4-6.) *Mitchell* held that the Constitution did not require the plaintiffs' appearance in bond court within 68 hours. So too, here—and it then follows that Plaintiffs' Fourth Amendment claims should be dismissed.

Adopting Plaintiffs' narrow interpretation of *Mitchell*'s scope would also ignore U.S. Supreme Court and Seventh Circuit precedent that rejected Section 1983 unlawful detention claims arising from arrests pursuant to valid arrest warrants. *See Baker v. McCollan*, 443 U.S. 137, 144-46 (1979) (finding the plaintiff failed to state a claim under Section 1983 for unlawful pretrial detention where he was arrested based on a valid warrant and remained in jail for three days); *Cannon v. New Port*, 850 F.3d 303, 307-08 (7th Cir. 2017) (holding the plaintiff failed to state a claim under the Fourth Amendment where he was arrested pursuant to a valid arrest warrant and was not brought before a judge for four days); *Panfil v. City of Chicago*, 45 F. App'x 528, 533-34 (7th Cir. 2002) (affirming dismissal of the plaintiff's Section 1983 claim where he was arrested pursuant to a warrant and detained by the City for two days); *cf. Armstrong v. Squadrito*, 152 F.3d 564, 567 (7th Cir. 1998) (plaintiff's constitutional rights were violated when he was imprisoned for 57 days after voluntarily turning himself in based on an outstanding body attachment warrant).

9

While *Baker*, *Panfil*, and *Armstrong* analyzed the plaintiffs' alleged constitutional injuries under the Fourteenth Amendment, not the Fourth, they are instructive here and demonstrate that multiple-day detentions of individuals who were arrested on valid arrest warrants did not violate the Constitution. As the Seventh Circuit noted in *Mitchell*, the standards under the Fourth and Fourteenth Amendments are "'identical in all respects.'" 37 F.4th at 1286 (quoting *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020)).

Moreover, *Mitchell* also rejected the argument that bail hearings must be held within 48 hours after arrest, because accepting that notion would have called into question the constitutionality of the federal Bail Reform Act. *Id.* at 1288-89. Similarly, here, accepting Plaintiffs' unfounded argument that they *must* be allowed to post cash bonds at police stations without an initial court appearance would likewise call into question the constitutionality of the Illinois Criminal Code and the Federal Rules of Criminal Procedure. *See, e.g.*, 725 ILCS 5/109-1(a) ("A person arrested with or without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county . . . ."); 725 ILCS 5/109-2(a) ("Any person arrested in a county other than the one in which a warrant for his arrest was issued shall be taken without unnecessary delay before the nearest and most accessible judge in the county where the arrest was made . . . ."); Fed. R. Crim. P. 40(a)(i) ("A person must be taken without unnecessary delay before a magistrate judge in the district of arrest if the person has been arrested under a warrant issued in another district for: . . . failing to appear as required by the terms of that person's release . . or by a subpoena[.]").

Determining that the City's policy violates the Fourth Amendment would implicitly hold that both the Illinois General Assembly, and Congress, have authorized routine violations of the Fourth Amendment. However, Plaintiffs are mistaken about the scope of the Fourth Amendment,

10

not the state and federal governments. Plaintiffs' argument should be rejected for this additional reason because, as the Seventh Circuit advised in *Mitchell*, "[j]udges should proceed cautiously when asked to step in to the shoes of legislators, as we do here." 37 F.4th at 1289.

Plaintiffs also incorrectly assert that the City argued *Mitchell* overruled *Driver v. Marion County Sheriff*, 859 F.3d 489 (7th Cir. 2017), and *Williams v. Dart*, 967 F.3d 625 (7th Cir. 2020), "without so much as citing [them]." (Dkt. 119, Pls.' Resp. ¶¶ 10-11.) As the City explained in the Motion, *Driver* and *Williams* are readily distinguishable because they involved claims of unlawful detention *after* the plaintiffs had already posted bond and a court ordered their release. (Dkt. 115, Mot. at 11-12.) That was not the case in *Mitchell*, nor is it here. Thus, *Mitchell* did not have occasion to overturn *Driver* and *Williams*. For all of these reasons, Plaintiffs' Fourth Amendment claims cannot survive.

### C. GAO 2015-06 is a valid general administrative order with the force of law.

Plaintiffs also claim that the City's reliance on GAO 2015-06, which they characterize as an "*ex parte* order," is misplaced. (Dkt. 119, Pls.' Resp. ¶ 8.) In support, Plaintiffs cite to *Alcorn v. City of Chicago*, No. 17 C 5859, 2018 WL 3614010 (N.D. Ill. Jul. 27, 2018), where the court opined that GAO 2015-06 "is not equivalent to a court order and violation of the GAO is not punishable by contempt of court." (*Id.*) However, *Alcorn* may have misconstrued Illinois law because disregarding GAO 2015-06 would subject the City to enforcement proceedings.

In Illinois, it is well-established that judicial power includes the administration of the courts, *People v. Felella*, 131 Ill. 2d 525, 538 (1989), and that the judiciary possesses the constitutional authority to promulgate procedural rules to facilitate the discharge of its duties. *Davidson v. Davidson*, 243 Ill. App. 3d 537, 538 (1st Dist. 1993). Administering court dockets is an inherent right of the court and, as provided by Illinois Supreme Court Rules, circuit courts may

make rules regulating their dockets, calendars, and "business." *Blair v. Macoff*, 284 Ill. App. 3d 836 (1st Dist. 1996) (citing 735 ILCS 5/1-104).

The Illinois Constitution and Supreme Court Rules[5] also provide that the chief judge of each circuit shall have general administrative authority over their court, which includes the "authority to provide for divisions, general or specialized, and for appropriate times and places of holding court." Ill. Const. 1970, art. VI, § 7(c); Ill. S. Ct. R. 21. In the event a person or agency fails to comply with the court's administrative order, an action "shall be commenced by filing a complaint and summons and shall be tried without a jury by a judge from a circuit other than the circuit in which the complaint was filed. The proceedings shall be conducted as in other civil cases." Ill. S. Ct. R. 21(f).

GAO 2015-06 is a valid administrative order regarding court procedures for handling out-of-county warrant arrests. In relevant part, GAO 2015-06 provides: "arresting agencies and the circuit clerk ***shall comply with the following procedures***: . . . Defendants taken into custody by an arresting agency located within Cook County on an arrest warrant issued by an Illinois state court outside of Cook County ***shall be required to appear in bond court*** . . . ." (Dkt. 115, Mot. Ex. A (emphasis added).) Moreover, GAO 2015-06 is entirely consistent with Section 5/109-2 of the Criminal Code, which calls for arresting agencies to present those who are arrested on out-of-county warrants to a judge. 725 ILCS 5/109-2(a); *see U.S. Bank, N.A. v. Dzis*, 2011 IL App (1st) 102812, ¶¶ 26-28 (general administrative order valid where it was consistent with state law).

Plaintiffs' reliance on *Alcorn*'s flawed reasoning cannot stand. Ignoring GAO 2015-06 subjects the City and its police officers to state-court enforcements proceedings under Illinois Supreme Court Rule 21. *See* Ill. S. Ct. R. 21(f). However, the City should not be found to have

---

[5] Illinois Supreme Court Rules have the force and effect of law. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010) (citing *People v. Houston*, 226 Ill. 2d 135, 152 (2007)).

committed constitutional violations for complying with a chief circuit judge's general administrative orders. *See Hernandez v. Sheahan*, 455 F.3d 772, 778 (7th Cir. 2006) ("There is no basis for an award of damages against executive officials whose policy is to carry out the judge's orders."). Accordingly, GAO 2015-06 is valid and mandated Plaintiffs' presentation to bond court.

### D. The Complaint Fails to Allege a Violation of the Fourteenth Amendment.

Plaintiffs' Fourteenth Amendment claims must also be dismissed under Rule 12(c). As an initial matter, Plaintiffs appear to have abandoned any potential Due Process claims under the Fourteenth Amendment. The City argued that the Fourteenth Amendment does not apply to claims for improper pretrial detention. (Dkt. 115, Mot. at 16-17.) Plaintiffs failed to rebut this assertion in their Response, and for good reason. The Seventh Circuit previously found that, following the U.S. Supreme Court's decision in *Manuel v. City of Joliet*, 580 U.S. 357 (2017), "[i]t's now clear that a § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) (emphasis in original). Accordingly, to the extent Plaintiffs maintain they asserted Due Process claims under the Fourteenth Amendment, such claims should be dismissed with prejudice.

The Equal Protection claims fare no better. Plaintiffs assert that the allegedly disparate treatment afforded to "persons held on warrants issued by judges sitting in the City of Chicago and warrants issued by all other judges in the State of Illinois . . . does not have a 'rational connection to a legitimate state interest[.]'" (Dkt. 119, Pls.' Resp. ¶ 14 (quoting *Ostrowski v. Lake Cnty.*, 33 F.4th 960, 967 (7th Cir. 2022)).) Plaintiffs thus concede that SO S06-12-02 is subject to rational basis review. (*See* Dkt. 115, Mot. at 15-16 (arguing application of rational basis review).)

Under rational basis review, "the burden is upon the challenging party to eliminate 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'"

13

*Smith*, 457 F.3d at 652 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Moreover, because the rational basis test "is not subject to courtroom fact-finding," the government's reasons may be based even on "rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Once a plausible basis for the legislation is identified, the Court's inquiry ends. *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980). Plaintiffs cannot meet this high burden.

Plaintiffs contend that complying with Illinois law is not a legitimate state interest to satisfy the rational basis test. (*See* Dkt. 119, Pls.' Resp. ¶ 14.) The City has already established that Plaintiffs' appearances in bond court were dictated by the Criminal Code and GAO 2015-06. Plaintiffs' reasoning to the contrary is based on faulty logic, and should be rejected.

Plaintiffs also claim that factual issues, such as whether courts in the City hold bond hearings every day, supposedly demonstrates why dismissal of their claims on the pleadings is inappropriate. (*See* Dkt. 119, Pls.' Resp. ¶¶ 15-16.) However, the rational basis test "is not subject to courtroom fact-finding," so the City's reasons may be based on "rational speculation . . . ." *See Beach Commc'ns, Inc.*, 508 U.S. at 315. Therefore, Plaintiffs' attempts to create factual disputes do not preclude the Court from deciding whether SO S06-12-02 passes rational basis review.

Moreover, the City has a legitimate interest in ensuring the efficient and effective disposition of criminal proceedings that relate to arrest warrants. *See Mitchell*, 37 F.4th at 1288 (recognizing states' interests in managing a large volume of bail proceedings with limited resources). This interest coincides with the State of Illinois' identical interest, which prompted the General Assembly to enact Sections 5/109-1 and 5/109-2 of the Criminal Code: to ensure defendants' court appearances, prevent pretrial flight and potential crimes, *see Mitchell*, 37 F.4th at 1288, and to guarantee that those who have been detained on valid arrest warrants are brought

before a judge, who is then empowered to admit the arrestee to bail and clear the warrant. SO S06-12-02 is rationally related to these interests because it complies with the Illinois legislature's enactments for criminal pretrial proceedings by requiring those arrested on arrest warrants to appear before a judge without unreasonable delay.

Although it is not the City's burden to demonstrate a rational relationship to a legitimate state interest, *Smith*, 457 F.3d at 652, the City has done so here. Plaintiffs cannot demonstrate otherwise. Accordingly, Plaintiffs have not, and cannot, allege that they were denied equal protection under the Fourteenth Amendment. Their claims should be dismissed with prejudice.

## CONCLUSION

For these reasons, the City respectfully requests that the Court grant the Motion, dismiss Plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(c), and grant such other and further relief as the Court deems necessary and just.

Dated: August 16, 2022                    Respectfully submitted,

**CITY OF CHICAGO**

*/s/ Allan T. Slagel*
**Special Assistant Corporation Counsel**
Allan T. Slagel aslagel@taftlaw.com
Elizabeth E. Babbitt ebabbitt@taflaw.com
Adam W. Decker adecker@taftlaw.com
Elizabeth A. Winkowski ewinkowski@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
(312) 527-4000

*Assistant Corporation Counsel*
Raoul Mowatt raoul.mowatt@cityofchicago.org
CITY OF CHICAGO DEPARTMENT OF LAW
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-3283