UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY MURDOCK, ANDREW CRUZ, JOHONEST FISCHER, THERESA KENNEDY, and BRIAN NEALS, on behalf of themselves and others similarly situated, | ) ) ) ) ) | 20 C 1440 |
| | ) | Judge Gary Feinerman |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Anthony Murdock, Andrew Cruz, Johonest Fischer, Theresa Kennedy, and Brian Neals

bring this putative class action under 42 U.S.C. § 1983 against the City of Chicago, alleging that

its express policy prohibiting persons arrested in Chicago on weekends or court holidays, or on a

warrant issued outside Chicago, from posting bond at the police station, and requiring them to

wait until the next day to post bond in court, violates the Fourth and Fourteenth Amendments.

Doc. 56. The City moves for judgment on the pleadings under Civil Rule 12(c). Doc. 115. The

motion is granted in part and denied in part.

**Background**

As with a Rule 12(b)(6) motion, the court on a Rule 12(c) motion assumes the truth of the

complaint's well-pleaded factual allegations, though not its legal conclusions. *See Bishop v. Air

Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred

to in it, and information that is subject to proper judicial notice," along with additional facts set

forth in Plaintiffs' opposition papers, so long as those additional facts "are consistent with the

pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). In addition, the court must consider "the answer … and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Special Order S06-12-02 sets forth the Chicago Police Department's ("CPD") non-traffic arrest warrant procedures. Doc. 56 at ¶ 6 & p. 18-30. Section IV.B.3 provides that "the following will be transported to Central Bond Court: (a) all persons arrested on a warrant outside of the First Municipal District [*i.e.*, Chicago] and no local charges, … [and] (c) all persons arrested on all warrants on Saturday, Sunday, and court holidays." *Id*. at ¶ 6 & p. 21, 28. Under this provision, individuals arrested in Chicago on a weekend or court holiday, or on a warrant issued outside Chicago, cannot post bond at the police station. *Id*. at ¶ 9. They instead must wait at the station until the following day and then appear before a judge of the Circuit Court of Cook County to post bond. *Id*. at ¶¶ 9-10. By contrast, CPD policy permits persons arrested on nonholiday weekdays on warrants issued in Chicago to post bond at the station. *Id*. at ¶ 11.

Plaintiffs were arrested by CPD in 2018 or 2019. *Id*. at ¶¶ 17-36, 42-46, 62-66. Murdock, Cruz, Fischer, and Neals were arrested on warrants issued outside of Cook County. *Id*. at ¶¶ 17-19, 22-23, 27-28, 32-33, 62-63; Doc. 117-1 at 26, 38, 57, 58, 112. Kennedy was arrested on a weekend on a warrant issued in Chicago. Doc. 56 at ¶¶ 42-43; Doc. 117-1 at 85. In accordance with Section IV.B.3, CPD officers prohibited Plaintiffs from posting the bond that the judges who issued their warrants had set, even though they otherwise could have done so at

the station. Doc. 56 at ¶¶ 20, 23, 28, 33, 43, 63. CPD officers instead held Plaintiffs at the station until they were transported the next morning to Central Bond Court. *Id*. at ¶¶ 20, 24, 26, 29, 31, 34, 36, 44, 46, 64, 66. After appearing before a judge, Plaintiffs were allowed to post the bond set on their warrants and then were released. *Id*. at ¶¶ 21, 26, 31, 36, 46, 66.

### Discussion

Plaintiffs' § 1983 claims—which allege that Section IV.B.3 of Special Order S06-12-02 violates the Fourth Amendment and the Equal Protection Clause—necessarily rest on a *Monell* theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. A municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citation omitted). To state a *Monell* claim, "[a] plaintiff must [allege facts] show[ing] that the violation was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). In addition to showing that the municipality acted culpably in one of those three ways, the plaintiff must show causation, demonstrating that the municipality, "through its *deliberate* conduct, … was the 'moving force' behind the injury alleged." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

The City argues that Plaintiffs cannot possibly establish causation for *Monell* purposes because Section IV.B.3 is "command[ed]" by Illinois law, such that "it is the policy contained in that state … law, rather than anything devised or adopted by the municipality, that is responsible for [Plaintiffs'] injury." *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718

(7th Cir. 1998). As the Seventh Circuit explained, "[w]hen state law unequivocally instructs a municipal entity to produce binary outcome X if condition Y occurs," then "[i]t is the statutory directive, not the follow-through, which causes the harm of which the plaintiff complains." *Snyder v. King*, 745 F.3d 242, 249 (7th Cir. 2014). Put another way, no "direct causal link exists when the only local government 'policy' at issue is general compliance with the dictates of state law[;] … under those circumstances, the state law is the proximate cause of the plaintiff's injury." *Id*. at 247. The City contends that Section IV.B.3 is mandated by two Illinois statutory provisions, 725 ILCS 5/109-1(a) and 5/109-2(a), as well as by Cook County Circuit Court General Administrative Order No. 2015-06. Doc. 122 at 6-7.

The City's argument that Sections 5/109-1(a) and 5/109-2(a) "require arrestees to appear before a judge when they are arrested with or without a warrant," Doc. 122 at 6, is meritless. True enough, those provisions might have *authorized* the City to promulgate Section IV.B.3. *See* 725 ILCS 5/109-1(a) ("A person arrested with or without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county … ."); 725 ILCS 5/109-2(a) ("Any person arrested in a county other than the one in which a warrant for his arrest was issued shall be taken without unnecessary delay before the nearest and most accessible judge in the county where the arrest was made … ."). But those provisions cannot be read to have *commanded* the City to do so, as another statutory provision permits CPD officers to accept bail at the police station, stating that "[w]hen bail has been set by a judicial officer for a particular offense or offender[,] any sheriff *or other peace officer* may take bail … and release the offender." 725 ILCS 5/110-9 (emphasis added). Indeed, as the City acknowledged at the motion hearing, Doc. 123, if Sections 5/109-1(a) and 5/109-2(a) truly required arrestees to appear before a judge when they are arrested with or without a warrant, then its current practice of allowing

4

persons arrested on nonholiday weekdays on warrants issued in Chicago to post bond at the station would violate Illinois law. Sections 5/109-1(a) and 5/109-2(a) accordingly provide no basis for rejecting Plaintiffs' *Monell* claim. *See Snyder*, 745 F.3d at 248 ("[A] municipality engages in policy making when it determines to enforce a state law that authorizes it to perform certain actions but does not mandate that it do so.") (internal quotation marks omitted).

The City's argument is far stronger as to General Administrative Order No. 2015-06. The Order's first sentence states: "Defendants taken into custody by an arresting agency located within Cook County on an arrest warrant issued by an Illinois state court outside of Cook County shall be required to appear in bond court in the appropriate district or division of this court." Doc. 115-1 at 2. This command plainly requires the City to bring to bond court persons arrested on a warrant issued outside Cook County. At the motion hearing, Doc. 123, Plaintiffs argued that the Order's last sentence—which states that "when the defendant is able to post the bail set on the warrant issued by the demanding authority, the defendant shall be admitted to bail and scheduled for a court appearance in the county of the demanding authority"—authorizes CPD to accept bond at the police station without bringing the arrestee to bond court. But that sentence is part of a paragraph whose first sentence is unambiguously directed at the Cook County Sheriff, not the City, and it therefore does not authorize CPD officers to accept bond payments at the station from persons arrested on warrants issued outside Cook County. Doc. 115-1 at 2. On its face, then, the Order prohibits individuals arrested on warrants issued outside Cook County from posting bond at the station.

The question remains whether the Order qualifies as a "command" of state law for purposes of *Bethesda* and *Snyder*. It does. Under Illinois law, circuit court general orders have the force of law. *See Davidson v. Davidson*, 612 N.E.2d 71, 72 (Ill. App. 1993) ("[T]he judicial

branch of government possesses the constitutional authority to promulgate procedural rules to facilitate the discharge of its constitutional duties."); Ill. S. Ct. R. 21(f) (describing proceedings to compel any person or agency to comply with circuit court general orders); *Alcorn v. City of Chicago*, 2022 WL 4483834, at *6 (N.D. Ill. Sept. 27, 2022) (holding that General Administrative Order No. 2015-06 "was a valid, nondiscretionary promulgation of instructions for court procedures of arrests on out-of-county warrants"). Accordingly, for persons arrested on warrants issued outside Cook County, it is the Order, not the City's compliance with the Order by enforcing Section IV.B.3, "that is responsible for the[ir] injury." *Bethesda*, 154 F.3d at 718-19.

Plaintiffs argue that interpreting the Order in that manner renders it in conflict with other provisions of Illinois law, requiring the court to construe the Order "so as to uphold its constitutionality, if reasonably possible." Doc. 124 at 6-10 (citing *People v. Minnis*, 67 N.E.3d 272, 283 (Ill. 2016)). But Plaintiffs do not point to, nor does the court perceive, any ambiguity in the Order that could allow for an alternative interpretation. And where, as here, a provision "is clear and unambiguous, it should be applied without resort to additional aids of statutory construction." *People v. Stewart*, __ N.E.3d __, 2022 IL 126116, ¶ 13.

Moreover, it does not matter for present purposes whether the Order in fact conflicts with Illinois law because the City is not free to disregard obligations imposed by the Order. To hold otherwise would require the City to measure the validity of Circuit Court of Cook County general orders under Illinois law before complying with them, "put[ing] local government at war with state government." *Bethesda*, 154 F.3d at 718. The City cannot pick and choose which circuit court general orders it will follow and which it will disobey. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986) (extending absolute immunity to a sheriff's

enforcement of a court order, explaining that immunity was necessary to avoid the "obviously untenable" result of "requir[ing] sheriffs … to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them").

Pressing the contrary result, Plaintiffs cite *Quinones v. City of Evanston*, 58 F.3d 275 (7th Cir. 1995), for the proposition that "state law is not a *defense* to liability under federal law; it is a *source* of liability under federal law." Doc. 124 at 13 (quoting *Quinones*, 58 F.3d at 277). In *Quinones*, the plaintiff sued a municipality under the Age Discrimination in Employment Act, which imposes vicarious liability on employers, including municipalities. 58 F.3d at 278. In holding that Illinois law did not provide a defense to liability, the Seventh Circuit specifically distinguished *Monell* claims—for which, as *Bethesda* and *Snyder* teach, a municipality's adherence to a state law command is a defense because "a city [is] answerable for its own policies alone" and "may not be held vicariously liable for the decisions of others." *Ibid*.

Plaintiffs also contend that the City could not have intended Section IV.B.3 to implement the Order because it predates, and has a broader scope than, the Order. Doc. 124 at 10-12. But the City's intent in enforcing Section IV.B.3 is irrelevant for *Monell* purposes. *See Bethesda*, 154 F.3d at 718 ("[T]he state of mind of local officials who enforce or comply with state … regulations is immaterial to whether the local government is violating the Constitution if the local officials could not act otherwise without violating state … law."). The focus, rather, is on whether, at the time the City took the challenged actions, it had any "discretion that [it] could exercise in the plaintiffs' favor." *Id*. at 718-19 ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives.") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)

(plurality opinion)). For persons arrested after the Order was promulgated in 2015 on warrants issued outside of Cook County, the City could not have allowed them to post bond at the police station, "unless [it] had decided to disobey" the Order. *Id*. at 719.

It necessarily follows that Murdock, Cruz, Fischer, and Neals—who were arrested in 2018 and 2019 on warrants issued outside Cook County—have no viable *Monell* claim. A different result obtains for Kennedy, who was arrested on a weekend on a warrant issued in Chicago. As the City acknowledged at the motion hearing, Doc. 123, the Order is silent as to arrests on weekends or court holidays on warrants issued in Cook County, which means that the Order does not command CPD to follow Section IV.B.3 insofar as it requires such arrestees to appear in bond court before posting bond. Accordingly, *Bethesda* and *Snyder* do not foreclose Kennedy's *Monell* claim.

That leaves the question of whether Kennedy has a viable claim that Section IV.B.3 in fact violates the Fourth Amendment as it applies to persons arrested on weekends or court holidays on warrants issued in Chicago. Although "[t]he Fourth Amendment does not require any particular administrative arrangement for processing bail admissions[,] [i]t does require … that whatever arrangement is adopted not result in seizures that are unreasonable in light of the Fourth Amendment's history and purposes." *Williams v. Dart*, 967 F.3d 625, 636 (7th Cir. 2020); *see Mitchell v. Doherty*, 37 F.4th 1277, 1286 (7th Cir. 2022) (assuming without deciding that "the Fourth Amendment applies after a judge has made a probable-cause determination"). "On the principle that bail orders terminate law enforcement's authority to seize on the same charges, courts tolerate only brief and reasonable administrative delay by a jailer in processing the release of an arrestee admitted to bail." *Williams*, 967 F.3d at 635; *see Driver v. Marion Cnty. Sheriff*, 859 F.3d 489, 491-92 (7th Cir. 2017) (reversing the denial of class certification for

"persons for whom legal authority for detention ha[d] ceased," reasoning that "all that [wa]s left [wa]s for the officials to merely process the release" and that, "[a]t some point well short of the 24-plus hours alleged here, there is no reason to believe that individual issues would account for that delay"); *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 515-16 (7th Cir. 2009) (observing that a policy of "assign[ing] a jail identification number to a detainee before allowing him to be released on bond" may be unconstitutional if the procedure "takes an unreasonable amount of time"). "Needless delay, or delay for delay's sake—or, worse, delay deliberately created so that the process becomes the punishment—violates the [F]ourth [A]mendment." *Portis v. City of Chicago*, 613 F.3d 702, 705 (7th Cir. 2010) (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)).

Kennedy claims that Section IV.B.3 "results in an unreasonable duration of post-arrest detention." Doc. 56 at ¶ 12. According to the complaint, Kennedy was held in custody overnight waiting to appear before Central Bond Court even though the judge who issued her warrant had already set her bail amount. *Id*. at ¶¶ 43-44, 46. Kennedy alleges that there is no legitimate reason for the delay she suffered, as individuals arrested during nonholiday weekdays on warrants issued in Chicago are allowed to post bond at the police station. *Id*. at ¶¶ 11-12. Those allegations are sufficient to allege a Fourth Amendment violation, at least on the pleadings. *See Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988) (holding that, while "the administrative tasks incident to a release of a prisoner from custody may require some time to accomplish," "[i]t is for a jury to determine whether the 11 hours it took the sheriff to discharge [the plaintiff] was reasonable"); *Portis*, 613 F.3d at 705 ("[D]etentions as brief as four hours could be excessive and must be justified. … [T]he court must examine not only the length of a given detention but also the reasons why release was deferred."); *DiGiacomo v. City of*

*Belvidere*, 2017 WL 3925400, at *3 (N.D. Ill. Sept. 7, 2017) ("While, at later stages in this case, plaintiff will have the burden of proof that his detention was excessive in light of its length and the reasons defendant may offer for it, at this motion to dismiss stage he need not prove anything.").

Contrary to the City's submission, Doc. 115 at 13-17, *Mitchell* does not defeat Kennedy's Fourth Amendment claim. The Seventh Circuit in *Mitchell* considered initial bail hearings, observing that "a judge must assess a suspect's dangerousness and risk of flight" in setting bail, and that "[r]ushing the initial bail determination" could harm the State's "interest in preventing pretrial flight and potential crime" and "endanger later prosecutorial success." *Mitchell*, 37 F.4th at 1287-88. Accordingly, in "balancing [the] different interests" involved in pretrial detention, the Seventh Circuit held that an initial bail hearing could occur up to sixty-eight hours after arrest without violating the Fourth Amendment. *Id*. at 1287-89. But the state interests cited by *Mitchell* are not implicated here, as the judge who issued Kennedy's warrant had already made the initial bail determination by the time she was arrested. Doc. 56 at ¶ 43. *Mitchell* therefore does not defeat Kennedy's claim that Section IV.B.3 violates the Fourth Amendment insofar as it applies to persons arrested on weekends or holidays on warrants issued in Chicago. And because her Fourth Amendment claim survives dismissal, it is unnecessary at this juncture to address her equal protection claim, which rests on the same facts and will involve the same discovery.

**Conclusion**

The City's motion for judgment on the pleadings is denied as to Kennedy and otherwise is granted. The claims of Murdock, Cruz, Fischer, and Neals are dismissed. The case will proceed on Kennedy's claims.

December 1, 2022

_____
United States District Judge