UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THEREA KENNEDY; SANTIAGO BRAVO; and JOHN PLUMMER, individually and on behalf of others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF CHICAGO,<br><br>　　　　Defendant. | No. 20 C 1440<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs alleged that their Fourth and Fourteenth Amendment rights were violated when they were not permitted to post bond at a Chicago Police station immediately after their arrest, but instead were detained until they could be presented to a judge in bond court the next day. The Court granted Defendant City of Chicago's motion to dismiss the Fourth Amendment claims as to all three Plaintiffs, and the Fourteenth Amendment claim with respect to Plaintiff Santiago Bravo who was arrested on a non-Chicago warrant. The Court denied the motion to dismiss the Fourteenth Amendment claim with respect to Plaintiffs Therea Kennedy and John Plummer who were arrested on Chicago warrants. The City has moved for judgment on the pleadings on the remaining Fourteenth Amendment claims regarding Chicago warrants, and Plaintiffs have moved have moved to reconsider the dismissal of Bravo's Fourteenth Amendment claim regarding non-Chicago warrants. The City's motion is granted and Plaintiffs' motion is denied.

In briefing the previous motion, the City argued that "the Police Department is justified in not releasing people arrested on non-Chicago warrants because, unlike Chicago warrants, non-Chicago warrants cannot be validated through the Chicago Police Department's 'CLEAR' system." *See* R. 179 at 10. With regard to Bravo's non-Chicago warrant claim, the Court found that the City's "justification is conceivably and rationally related to the legitimate purpose of ensuring that non-Chicago warrants are properly administered," and dismissed the claim. *See* R. 184 at 5.

However, with regard to Kennedy's and Plummer's claims about Chicago warrants, the Court found the following:

> The CLEAR system is presumably accessible on weekends just as it is on weekdays; at least the City does not contend otherwise. If Chicago Police officers can confirm Chicago warrants on weekends just as easily as they can be confirmed on weekdays, then there is no "readily apparent" reason, *see Wroblewski,* 965 F.2d at 460, for prohibiting weekend arrestees on Chicago warrants from posting the bond specified in their warrant at the police station without waiting to see a judge.

*Id.* at 5-6.

Different from its previous motion to dismiss, the City now argues that its policy of requiring bail hearings for people arrested on Chicago warrants on the weekends (rather than permitting them to pay the bond at police station) is required by Circuit Court General Administrative Order No. 2004-02 which provides:

> Individuals with Warrants returnable within the First Municipal District are to be transported directly to the Branch Court on regularly-scheduled court date(s); on Saturday, Sunday, Holidays [sic] the Warrants are returnable to Central Bond Court.

2

R. 188-1 at 2. The City argues that Order 2004-02 is a "command of state law" and that it cannot be liable for any civil rights violation that results from following that command. *See Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716 (7th Cir. 1998). The Seventh Circuit explained in *Bethesda* that a local government cannot be liable for an alleged civil rights violation that results from following a state law "command" because "it is the policy contained in that state . . . law, rather than anything devised or adopted by the municipality, that is responsible for [the plaintiff's] injury." *Id.* at 718. Put another way, no "direct causal link exists when the only local government 'policy' at issue is general compliance with the dictates of state law[;] . . . under those circumstances, the state law [and not the local government policy] is the proximate cause of the plaintiff's injury." *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014).

The previous judge on this case already found that a different Cook County Circuit Court General Order qualified as a "command of state law." *See* R. 136 at 5-6. This is because Illinois courts have found that under Illinois law, Circuit Court General Orders have the force of law. *See Davidson v. Davidson*, 612 N.E.2d 71, 72 (Ill. App. Ct. 1st Dist. 1993) ("[T]he judicial branch of government possesses the constitutional authority to promulgate procedural rules to facilitate the discharge of its constitutional duties."). Another judge in this district made a similar finding in the context of claims similar to those at issue here. *See Alcorn v. City of Chicago*, 2022 WL 4483834, at *6 (N.D. Ill. Sept. 27, 2022) (holding that General Administrative Order No. 2015-06 "was a valid, nondiscretionary promulgation of instructions for

3

court procedures of arrests on out-of-county warrants"). Accordingly, for persons arrested on the weekend on warrants issued in Chicago, it is the Circuit Court's General Order, not the Police Department's compliance with it, "that is responsible for [Plaintiffs'] injury." *See Bethesda*, 154 F.3d at 718.

Plaintiffs do not dispute this legal analysis. Instead, they challenge the "vitality" of Order 2004-02. *See* R. 193 at 11. First, they argue that the Order is invalid because it was issued by the presiding judge of a court division, rather than the chief circuit judge. Contrary to Plaintiffs' argument, however, Illinois courts have consistently held that Supreme Court Rule 21(e) allows chief circuit judges to delegate rule-making power to the presiding judges of different divisions within the circuit court. *See OneWest Bank, FSB v. Markowicz*, 968 N.E.2d 726, 731 (Ill. App. Ct. 1st Dist. 2012) ("We interpret Rule 21[e] as allowing the chief judge to delegate his or her Rule 21[e] authority, including his or her authority to issue general orders, to the presiding judges in the divisions of the circuit court, including, as here, his or her authority to issue general administrative orders."); *U.S. Bank, N.A. v. Dzis*, 957 N.E.2d 1183, 1188 (Ill. App. Ct. 1st Dist. 2011) (same); *Blair v. Mackoff,* 672 N.E.2d 895, 900 (Ill. App. Ct. 1st Dist. 1996) (same). Notably, the Illinois Appellate Court has specifically rejected the same argument Plaintiffs make here, finding Rule 21(e) "authorized the presiding judge of the chancery division to enter general orders in the exercise of her general administrative authority." *U.S. Bank*, 957 N.E.2d at 1188. And contrary to Plaintiffs' argument, there is no authority requiring that the chief circuit judge make a specific delegation of rule-making authority to presiding judges

4

before presiding judges may issue general orders. Rather, Illinois courts have held that Rule 21(e) by itself provides the authority for presiding judges to issue general orders. Thus, it was within in the presiding judge's authority to issue Order 2004-02.

Plaintiffs next argue that Order 2004-02 was not in affect at the time of Plaintiffs' arrests because it had been superseded by other orders. Plaintiffs cite numerous general orders and general administrative orders, which they contend undermine the force of Order 2004-02. But Plaintiffs do not argue that any of these orders *expressly* superseded or nullified Order 2004-02 regarding posting bail for Chicago warrants. Plaintiffs also do not argue that any of the orders they cite addressed the bail payment on *weekends*. Rather, Plaintiffs cite provisions from several orders regarding bail payments at police stations in general, and other provisions about non-Chicago warrants, to surmise that weekend arrestees should be allowed to post bail at police stations on weekends. For instance, Plaintiffs cite General Order 2015-06 which provides that "when the defendant is able to post the bail set on the warrant . . . the defendant shall be admitted to bail and scheduled for a court appearance in the county of the demanding authority." *See* R. 115-1 at 2. But General Order 2015-06 concerns "arrests on . . . warrants issued outside of Cook County," and it also provides that such arrestees are "required to appear in bond court." *Id.* This order is not an indication that the Circuit Court intended to repeal the command in Order 2004-02 that weekend arrestees on Chicago warrants be required to appear in bond court. At bottom, Plaintiffs cite no order that expressly contradicts or supersedes Order 2004-02.

5

In general, Plaintiffs argue that there is no Circuit Court order that "directed the Chicago Police Department to refuse to accept bond from persons arrested on a warrant, whether the warrant was returnable in Chicago on a weekend or holiday, in a suburban county, or issued outside of Cook County." R. 193 at 3. This, however, is too narrow a reading of Order 2004-02. While Order 2004-02 does not expressly prohibit the Police Department from accepting bond payments on the weekends, it orders the Police Department to deliver weekend arrestees to the Bond Court. That order effectively prohibits taking bond payments at police stations.

In addition to opposing the City's motion for judgment on the pleadings on Plaintiffs' claims regarding Chicago warrants, Plaintiffs seek reconsideration of the Court's prior dismissal of their claims regarding non-Chicago warrants. They argue that the Court's reasoning based on the CLEAR system was factually erroneous. That argument, however, is now moot is light of the Court's finding that Order 2004-02 commands all weekend arrestees appear in bond court, whether arrested on a Chicago or non-Chicago warrant. For that reason, Plaintiffs motion to reconsider is denied.

6

## Conclusion

Therefore, the City's motion for judgment on the pleadings [188] is granted and Plaintiffs' motion for reconsideration [189] is denied. Plaintiffs' claims are dismissed with prejudice because they have already had two opportunities to amend their complaint plus this motion for reconsideration. Judgment will be separately entered in the City's favor.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: November 6, 2024